[Civil No. 1653.    Filed April 16, 1919.]

[179 Pac. 966.]

R. L. BENTON, Appellant, v. JULIUS REGESER, Appellee.

1. APPEAL AND ERROR—FINDINGS OF FACT—REVIEW.—A verdict or judgment will not be disturbed on appeal, where the testimony is conflicting.

2. MASTER AND SERVANT—INJURIES TO THIRD PERSON—AUTOMOBILES.— A father who furnishes an automobile for the pleasure and convenience of the members of his family makes the use of such vehicle for such purpose his affair or business, and any member of the family driving the vehicle with his consent, either express or implied, is the father's agent, and the father is liable for his negligence.

3. EVIDENCE—CONCLUSION OF WITNESS.—In an action by a bicyclist injured in a collision with defendant's automobile, driven by defendant's son, a question asked the father whether or not the son was on the father's "business" at the time of the accident called for a conclusion of the witness.

4. EVIDENCE—RES GESTAE—DECLARATIONS OF AGENTS.—The declaration of an agent at the time of a particular transaction which is the subject of inquiry, and while acting within the scope of his authority, may be given in evidence against the principal as a part of the *res gestae*, but declarations of an agent made after the transaction is fully completed and ended are not admissible.

5. EVIDENCE — RES GESTAE — DISCRETION OF COURT.—The question whether a declaration made by an agent at the time of a particular transaction which is the subject of inquiry should be admitted against the principal as a part of the *res gestae* should in a great measure be left to the discretion of the trial court.

6. APPEAL AND ERROR—MATTERS REVIEWABLE—OBJECTIONS.—In an action against two persons for negligence, it cannot be held error that

XX Ariz.—18

the court admitted evidence which was admissible against only one of the defendants, where the objection thereto was general.

7. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — PROXIMATE CAUSE.—To bar recovery, negligence of plaintiff must have contributed to his injuries.

APPEAL from a judgment of the Superior Court of the county of Pima.  A. G. McAlister, Judge.  Affirmed.

Mr. Francis Hartman and Mr. R. W. Sprague, for Appellant.

Mr. E. B. Frawley, Mr. A. R. Connor and Mr. John H. Campbell, for Appellee.

BAKER, J.—This is an action to recover damages for injuries sustained by the plaintiff, Julius Regeser, by being struck by an automobile owned by the defendant, R. L. Benton, which at the time was being driven by his minor son, Bryan Benton.  Both father and son were made defendants in the complaint, but during the trial the action, on plaintiff's motion, was dismissed as against Bryan Benton.  The trial resulted in a verdict for plaintiff in the sum of $875. There was a motion for a new trial, which was overruled by operation of law, and from the judgment on the verdict the defendant brings this appeal.

The complaint charges that the plaintiff was riding his bicycle along the north side of Fourteenth Street at or near its intersection with Stone Avenue, in the city of Tucson, and that an automobile owned by the defendant, R. L. Benton, but driven by his minor son, Bryan Benton, abruptly turned into Fourteenth Street from Stone Avenue, and struck the plaintiff, knocking him down and dragging him across the street and injuring him.  The negligence charged is that Bryan Benton, the minor son, in turning into Fourteenth Street, cut the corner of the street, in violation of an ordinance of the city requiring that all vehicles, before turning to the left from one street into another, should pass to the right and beyond the intersection of the streets.  The complaint further charges that Bryan Benton, the minor son, was acting as the agent of his father, the defendant, R. L. Benton, and was operating the car at the time of the accident in the business of his father.

The answer of the defendant denies ownership of the automobile; denies also any negligence on the part of his minor son, Bryan Benton, in handling the machine at the time of the accident. The answer further denies the allegations upon which the responsibility of the defendant is sought to be based. The answer contains also a plea of contributory negligence in that the plaintiff was riding his bicycle at the time of the accident on the south or left-hand side of Fourteenth Street, contrary to an ordinance of the city. The case went to the jury upon the issues formed by the pleadings.

The evidence clearly establishes the fact that the defendant, R. L. Benton, was the owner of the automobile. No more will be said about that. Nor is it necessary to make any exhaustive review of the testimony relating to the negligence of the defendant's son, Bryan Benton, in driving the automobile at the time of the accident, or the testimony relating to the alleged contributory negligence on the part of the plaintiff. The testimony conflicts sharply upon both of these points. Both were questions for the jury. We have so often decided that a verdict or judgment will not be disturbed on appeal where the testimony is conflicting that it would be a mere work of supererogation to repeat it.

The real controversy in the case is whether the defendant can be held liable for the damages under the doctrine of *respondeat superior*. The question, of course, depends upon facts proven in the case.

It is fairly deducible from the evidence that the automobile was kept and maintained by the defendant, R. L. Benton, for the use of the members of his family, and for their pleasure and convenience. Different members of the family drove the automobile as they pleased. The minor son, Bryan Benton, who was driving the machine at the time of the accident, had been accustomed or in the habit of driving it with the defendant's consent, express or implied, for more than a year. He would use it at times for his own pleasure and convenience and at other times for the pleasure and convenience of other members of the family. On the morning of the accident the young son had taken his sisters to church in the machine and had later gone to another church to bring his brother home, and, failing to find his brother, was returning home alone when the accident occurred.

The question whether or not, under the facts above set forth, a parent is to be held liable for the negligence of his minor son, has never been decided by the courts of Arizona, although there are a number of decisions upon the question in other jurisdictions.

In *Birch* v. *Abercrombie,* 74 Wash. 486, 50 L. R. A. (N. S.) 59, 133 Pac. 1020, a man and wife owned an automobile which was purchased and kept for the use of the family, and it was customary for the members of the family to drive it at their pleasure. On a certain day, when the man and wife were absent from home, the daughter entertained a number of friends at luncheon. In taking them home in the automobile, she negligently struck and injured a woman on the highway. In a suit for damages, the jury found for the plaintiff against both the girl and her parents, and this finding was held by the supreme court to be authorized by the evidence. In the opinion ELLIS, J., said:

"It seems too plain for cavil that a father, who furnishes a vehicle for the customary conveyance of the members of his family, makes their conveyance by that vehicle his affair, that is, his business, and any one driving the vehicle for that purpose with his consent, express or implied, whether a member of his family or another, is his agent."

And again Judge ELLIS said:

"We think that, both on reason and authority, the daughter in the present instance should be held the agent of her parents in the use of the automobile. Any other view would set a premium upon the failure of the owner to employ a competent chauffeur to drive an automobile kept for the use of the members of his family, even if he knew that they were grossly incompetent to operate it for themselves. The adoption of a doctrine so callously technical would be little short of calamitous."

In *McNeal* v. *McKain,* 33 Okl. 449, 41 L. R. A. (N. S.) 775, 126 Pac. 742, a father bought an automobile for the pleasure and comfort of himself and family; his minor son, who was a member of his family, being authorized to use it at any time for that purpose. It was held that the son in taking it out for the pleasure of himself and sisters with a friend who was a guest of the father's family, was a servant or agent of the father within the meaning of the rule as to liability of a principal for the torts of an agent or servant, and was not

performing a service independent of his father, and that the latter was liable for his negligence in driving the machine. In the opinion WILLIAMS, J., said: °

"Vehicles and motorcars may be used, not only for the business of the master for profit, but also in his business for pleasure. If Paul, the minor son of the plaintiff in error, had been driving his father's carriage (whilst he was a member of his family) in which were contained his sister and a guest of his father's house, the same being done by him with the express or implied consent of his father, the relation of master and servant would exist, and the father would be liable for the negligent acts of the minor son whilst engaged in the driving of the carriage, and the same rule is supported by authority as to motor cars."

In *Stowe* v. *Morris,* 147 Ky. 386, 39 L. R. A. (N. S.) 224, 144 S. W. 52, a motor car was kept by a man for the comfort and pleasure of his family, including a minor son and daughter as members of it. They had the right to use it as often as and when they liked. On the occasion in question the son took the car at his own volition, and at his suggestion carried his sister and three other ladies for a ride. While he was driving the machine he carelessly ran down and injured a boy on a bicycle. The father was held to be liable on the ground that, the machine, having been provided for the comfort and pleasure of the family, and the son having been given the right to use it, he was treated as the servant of his father when operating it (though without a special permission on that occasion) for the entertainment of his sister and her friends. In the opinion WINN, J., said:

"So in the case at bar the father had provided his family with this car as a means of recreation and amusement; and the son, in the use of the car for that purpose, was not performing an independent service of his own, but was carrying out what, within the spirit of the matter, was the business of the father."

For other cases of like import, see *Daily* v. *Maxwell,* 152 Mo. App. 415, 133 S. W. 351; *Kayser* v. *Van Nest,* 125 Minn. 277, 51 L. R. A. (N. S.) 970, 146 N. W. 1091; *Guignon* v. *Campbell,* 80 Wash. 543, 141 Pac. 1031; *Griffin* v. *Russell,* 144 Ga. 275, Ann. Cas. 1917D, 994, L. R. A. 1916F, 216, 87 S. E. 10; *King* v. *Smythe,* 140 Tenn. 217, L. R. A. 1918F, 293, 204 S. W. 296.

In the case last cited LANSDEN, J., speaking for the court, said:

"If an instrumentality of this kind is placed in the hands of his family by a father, for the family's pleasure, comfort, and entertainment, the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained. A judgment for damages against an infant daughter or an infant son, or a son without support and without property, who is living as a member of the family, would be an empty form. The father, as owner of the automobile and as head of the family, can prescribe the conditions upon which it may be run upon the roads and streets, or he can forbid its use altogether. He must know the nature of the instrument and the probability that its negligent operation will produce injury and damage to others. We think the practical administration of justice between the parties is more the duty of the court than the preservation of some esoteric theory concerning the law of principal and agent. If owners of automobiles are made to understand that they will be held liable for injury to person and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities."

The cases cited firmly establish the rule that a father who furnishes an automobile for the pleasure and convenience of the members of his family makes the use of the machine for the above purposes his affair or business, and that any member of the family driving the machine with the father's consent, either express or implied, is the father's agent. We are convinced that the rule is based on sound reason and that it is supported by the great weight of authority, and therefore shall adopt it as the rule in this jurisdiction.

In the case at bar the minor son was using the machine at the time of the accident in the very business for which the father kept and maintained the vehicle, viz., the pleasure and convenience of the members of his family. He had conveyed his sisters to church in the machine and was returning home alone. The fact that he was the only member of the family present in the machine at the time of the accident makes no

difference so far as the liability of the father is concerned. There can be no question but that he was driving the machine with his father's implied consent.

Under the circumstances it must be held that the minor son was the agent of his father in driving the machine at the time of the accident, and that he was engaged in the business of his father. The fact that his agency was not a business agency, nor the service a remunerative service, has no bearing upon the question of his father's liability. *McNeal* v. *McKain, supra.*

The defendant claims that he was not permitted to prove that at the time of the accident Bryan Benton was on no "business" of his father's. We do not understand from the record that such was the ruling of the court. Counsel for the defendant asked him several times, whilst he was upon the stand as a witness, if his minor son was on his "business" at the time of the accident. Manifestly this called for the conclusion of the witness, and was objected to for that reason, and the objection was properly sustained. No questions were attempted to be asked the witness about his son's authority to use the car or the purpose for which the defendant kept the car, or the purpose for which his son was driving the car at the time of the accident.

Immediately after the accident the plaintiff was conveyed to the hospital in a taxicab. The defendant's son either accompanied him or was present at the hospital at or near the time when the plaintiff arrived there. The record does not affirmatively disclose what length of time had elapsed between the accident and the arrival of the parties at the hospital, but it is reasonable to suppose that the time was very short. Two witnesses for the plaintiff were permitted to testify to the effect that the defendant's son, when the services of the taxicab were about to be dispensed with at the hospital, told one of the witnesses "not to pay for the taxicab [meaning the taxicab in which plaintiff was carried to the hospital]; that his father would settle everything; that it [the accident] was his [the son's] fault." The defendant insists that the court erred in refusing to strike out this evidence. The testimony was clearly admissible as against the defendant Bryan Benton as a declaration against interest. The question as to whether it was admissible as against the defendant R. L. Benton is a very close one. We understand the rule to be that the declara-

tion of an agent made at the time of a particular transaction which is the subject of inquiry, and while acting within the scope of his authority, may be given in evidence against the principal as a part of the *res gestae,* but it is equally well settled that the declarations of an agent made after the transaction is' fully completed and ended are not admissible. 10 R. C. L. 173; 16 Cyc. 1006. The authorities differ as to the instances in which such declarations should be admitted as against the principal. The weight of authorities, however, inclines toward leaving the question of admissibility of this class of testimony in a great measure to the discretion of the trial court. The facts are before him, and he has a better opportunity to determine whether testimony of this character is in fact a part of the things done, a part of the *res gestae,* than an appellate court. *Smith et al.* v. *C., R. I. & P. Ry. Co.,* 42 Okl. 577, 142 Pac. 398; *Walters* v. *Spokane Int. Ry. Co.,* 58 Wash. 293, 42 L. R. A. (N. S.) 917, 108 Pac. 593.

Mr. Wigmore, in his valuable work on Evidence, at section 1750, speaking of this question, says:

" . . . There is a lamentable waste of time by Supreme Courts in here attempting either to create or to respect precedents. Instead of struggling weakly for the impossible, they should decisively insist that every case be treated upon its own circumstances. They should, if they are able, lift themselves sensibly to the even greater height of leaving the application of the principle absolutely to the determination of the trial court. Until such a beneficent result is reached, their lucubrations over the details of each case will continue to multiply the tedious reading of the profession."

The defendant appears not to have made any objection to the testimony for the reason that it was inadmissible as against him. The objection was general. Furthermore, no request was made of the court that the testimony be limited to the defendant Bryan Benton. Under the circumstances, we do not find that it was error to admit this evidence.

The defendant assigns error upon the refusal of the court to give several instructions that he requested. The court refused to instruct the jury to return a verdict for the defendant. This was not error, for two reasons: First, the evidence in reference to the negligence of Bryan Benton was conflicting; and second, the evidence upon the question of the agency of Bryan Benton, the driver of the automobile, was practically

uncontradicted. The court might properly have instructed the jury, as a matter of law, that Bryan Benton was the agent of the defendant and engaged in his business at the time of the accident.

Another assignment is based upon the refusal of the court to instruct the jury to the effect that, if Bryan Benton was driving the automobile for his own pleasure, business or convenience, and not for any pleasure, business, convenience or purpose of the defendant, plaintiff could not recover. There was no evidence upon which this instruction could have been based. It was not error to refuse it.

Another assignment is based upon the refusal to instruct the jury to the effect that if plaintiff was in the middle or nearer to the south side of the street than to the north side of the street, he could not recover. The instruction refers to the alleged contributory negligence of the plaintiff in violating the city ordinance prohibiting people from riding on the south or left-hand side of the street. It omits, however, any reference to the legal requirement that such negligence, if it existed, contributed to the plaintiff's injury. A correct instruction upon the subject was given by the court. In fact, if any criticism may be made of the court's instructions, it is that the question of contributory negligence was overemphasized. None of the instructions requested by the defendant were erroneously refused. Other points made by the defendant as against the instructions given have been examined and ruled against him. These instructions are very elaborate and clearly state the law as applied to the facts of the case.

Observing no reversible error in the record, the judgment is affirmed.

CUNNINGHAM, C. J., and ROSS, J., concur.