682 P.2d 1152

**Kevin BROWN, an unmarried man, Plaintiff/Appellant,**

**v.**

**James R. STOGSDILL and Marilyn Stogsdill, husband and wife, Defendants/Appellees.**

**No. 2 CA–CIV 4922.**

Court of Appeals of Arizona, Division 2.

April 23, 1984.

Review Denied June 26, 1984.

Corey, Farrell & Bogutz, P.C. by Barry M. Corey, Tucson, for plaintiff/appellant.

Sorenson, Moore, Benham, Garrett & Julian by Theodore A. Julian and Georgia Wilder, Phoenix, for defendants/appellees.

## OPINION

HOWARD, Judge.

 The question in this case is whether the family purpose doctrine may be applicable so as to make the defendants/appellees liable for damages arising from personal injuries sustained by plaintiff/appellant in an automobile accident in which their son was driving. As this is an appeal from the granting of summary judgment, the facts should be viewed in the light most favorable to appellant. *Rowe v. Schultz*, 131 Ariz. 536, 642 P.2d 881 (App.1982).

## THE FACTS

Christopher Stogsdill was the driver of the car in which plaintiff Kevin Brown was a passenger. They were involved in a one-car accident on September 30, 1979. Christopher Stogsdill died in the collision and plaintiff was severely injured. The decedent had been driving a 1971 Jeepster which was registered in his own name. At the time of the accident the decedent was 18 years old. Although he had lived at various locations away from his parents' residence in the previous year, Christopher Stogsdill, at the time of the accident, was living in the guesthouse on his parents' property. He paid his parents $20 a week for room and board and took many of his meals at his parents' home. He was employed as a mechanic and in the nine months prior to his death had earned $3,726.51.

The car involved in the collision had been owned by Christopher's father prior to its transfer to Christopher. He had purchased the car from his father for $600 approximately three or four months prior to the

accident. At the time that the vehicle was transferred to Christopher Stogsdill it was in mechanically sound repaired condition. It had, however, previously been "wrecked." Christopher had made the repairs himself and had purchased parts with money he earned from his employment. Christopher also paid for the upkeep of the car from his own earnings and maintained his own insurance.

Appellant submitted affidavits from a licensed real estate appraiser who, after investigation, opined that the estimated market rental value of the guesthouse in which Christopher lived would not have been less than $125 per month, significantly more than the amount which Christopher paid. This estimate was for an unfurnished guesthouse and did not include the meals and furnishings provided by Christopher's parents. In addition, appellant has submitted an affidavit that the market value of the vehicle which appellees sold to Christopher for $600 was between $2,000 and $3,200. These are "blue book" values and copies of the appropriate publications were included.

The trial court judge granted summary judgment because he found:

"That the deceased Christopher A. Stogsdill was an emancipated person and not under the control of the family unit; that the car in question was not furnished to him as a member of the family unit, [and] that there was no control exercised by the family for his use of the vehicle ...."

This finding was apparently meant to hold that as a matter of law the family purpose doctrine did not apply in this case.

### FAMILY PURPOSE DOCTRINE

■ The family purpose doctrine is an exception to the general principle that one who permits another to use his automobile does not thereby become liable for that person's negligence in the absence of an agency or employment relationship. 60A C.J.S. § 433(1). In general under the family purpose doctrine the head of a family who maintains a motor vehicle for the use, pleasure and convenience of that family is liable for the negligence of a member of the family who has the general authority to drive it while the vehicle is used for family purposes. This doctrine is recognized in Arizona and the prima facie case is set out in *Pesqueira v. Talbot*, 7 Ariz.App. 476, 441 P.2d 73 (1968) as follows:

"... there must be a family with sufficient unity so that there is a head of the family, the motor vehicle responsible for the injury must have been one 'furnished' by the head of the family to a member of the family and this vehicle must have been used on the occasion in question by the family member with the implied or express consent of the head of the family for a family purpose." 7 Ariz. App. at 480, 441 P.2d 73.

The court in *Pesqueira v. Talbot*, supra, also stated that the family purpose doctrine is to be given broad effect in Arizona. In addition, the court stated in addressing the boundaries of this doctrine that "[u]nless the undisputed facts lead inexorably to a conclusion of non-liability, summary judgment [is] not proper." 7 Ariz.App. at 479, 441 P.2d 73. We will examine each element in turn.

### FAMILY

■ The family has been defined as "a group of individuals living under one roof and usually under one head: HOUSEHOLD." Webster's New Collegiate Dictionary (1980) at 410. For the family purpose doctrine the family is not limited to parents and their minor dependent children. An adult who is not dependent and who is self-sustaining can still be considered a member of the household for the purposes of the family purpose doctrine so long as the family itself is a family unit with a family head. *Dunn v. Caylor*, 218 Ga. 256, 127 S.E.2d 367 (1962); *White v. Vananda*, 13 N.C.App. 19, 185 S.E.2d 247 (1971). In *Dunn* the court held that the fact that the son was in the United States Army at the time of the accident was not sufficient to defeat the application of the family purpose doctrine. The court said:

"... that the controlling test is not whether the child is adult or minor or self-supporting or dependent but rather whether the child 'was using the car for a purpose for which the parent provided it with the permission of the parent either express or implied.'" 127 S.E.2d at 369.

Another Georgia case, *Calhoun v. Eaves*, 114 Ga.App. 756, 152 S.E.2d 805 (1966) held that where a son was emancipated, lived away from home, controlled all of his own finances, purchased a vehicle in his own name, for his own use and that "the father loaned him the money to purchase the vehicle, he repaid that loan exclusively from assets under his control and the vehicle was at all times under his custody and control," the son was not a member of the father's family for the purposes of the family purpose doctrine.

■ In the instant case the facts fall somewhere inbetween. The son lived with his parents, though he paid room and board which was allegedly inadequate to cover the real value of what he received for his money. He purchased the car with his own money but the car may have been purchased at a price much lower than its fair market value. It appears therefore that there is a valid question of fact as to whether the decedent was sufficiently emancipated to not be considered a member of his parents' family unit.

### DID THE FATHER "FURNISH" THE CAR?

The second question is whether the vehicle had been "furnished" by the head of the family to the decedent as a member of that family. In *Pesqueira v. Talbot*, supra, the court defined "furnished" broadly. There the court said:

"... a permissible connotation in the light of our Supreme Court's pronouncements is that the parent 'furnishes' the motor vehicle when the parent through a substantial gift or a nonbusinesslike loan makes it possible for the child to purchase a car that the child would otherwise not have been able economically to acquire." 7 Ariz.App. at 481, 441 P.2d 73.

In that case the automobile in question had been purchased by the daughter registered in the daughter's name and been acquired through the use of substantial financial assistance from the mother in the form of loans. The court held that these loans were sufficient to bring into play the application of the family purpose doctrine despite the fact that the car was registered in the name of the child and not in the name of the head of the household.

■ In the instant case the car was registered in the name of the decedent, Christopher Stogsdill. There is conflicting evidence as to the value of the car although it is conceded by all parties that the car was purchased for $600. Appellees claim that $600 was the value of the car although no specific evidence was presented aside from his personal estimation of the value of the vehicle. Appellant has presented evidence that cars of the same make and model were worth substantially more at the time. Although the car in question had been "wrecked", it was repaired by the time it was purchased by the decedent. It is a question of fact as to whether this affected the value of the car. Clearly the question of the value of the car is material as to whether this car was "furnished" by the head of the household. It is not dispositive that title to car was held in the name of Christopher Stogsdill. See *Clemons v. Busby*, 144 Ga.App. 207, 240 S.E.2d 764 (1977); *Smith v. Simpson*, 260 N.C. 601, 133 S.E.2d 474 (1963). Nor would the fact that the court found some parental assistance be dispositive. As the court in *Pesqueira* stated:

"We would not be understood as holding in effect that a minor may never, without exposing the head of the family to liability, make use of parental resources to purchase an automobile to be owned and used exclusively by the minor. To preclude the trier of fact from finding the family purpose doctrine applicable, however, the acquisition of the motor vehicle must be more independent of

substantial beneficence from the parent than is apparent from the present record before us." 7 Ariz.App. at 482, 441 P.2d 73.

In that case the mother gave the daughter a substantial loan to purchase the car. The daughter repaid the mother monthly although neither kept any record of the payments but it was not fully paid at the time of the accident. The mother also made the initial payment on the insurance policies which were obtained for the daughter. The *Pesqueira* court has also suggested that the elements of "furnishing" could cease if the loan were completely paid off and the child were fully responsible for the car. A mere businesslike agreement between parent and child for the financing of the car would not be "substantial beneficence." *Calhoun v. Eaves*, supra.

## FAMILY PURPOSE

 The final question for consideration is whether the decedent at the time of the accident was driving the car with the implied or express consent of the head of the family and for a family purpose. While there is disagreement among states recognizing the family purpose doctrine, Arizona takes the broad view. In *Pesqueira* the court held that a minor daughter traveling to and from work using the car to earn her living was serving a family purpose. While this is not dispositive in the instant case as the child in question was not a minor, and therefore the parents were not entitled to his earnings, in states such as Arizona taking the broad view of the family purpose doctrine, the fact that the decedent was using the vehicle solely for his own purpose and pleasure at the time of the accident would not automatically rule out the application of the family purpose doctrine. *Benton v. Regeser*, 20 Ariz. 273, 179 P. 966 (1919); 60A C.J.S. § 433(5).

The trial court found that there was no evidence of any control over the automobile, thereby precluding application of the family purpose doctrine. In *Pesqueira v. Talbot*, supra, we held that "control" was not a separate criterion but that

there is sufficient "control" inherent in the elements of "head of the family", "furnishing" and "permission." We believe the trial court erred when it decided the issues on the basis of no control. There being evidence that the father furnished the car to the child and in so doing imposed no restrictions on its use, it can be inferred that the automobile was being driven by the child with his father's consent at the time of the accident. The record shows sufficient questions of material fact to withstand a motion for summary judgment.

Reversed and remanded for further proceedings consistent with this opinion.

BIRDSALL, C.J., and HATHAWAY, J., concur.