743 P.2d 410

**Craig E. JACOBSON, Albert D. Jacobson and Donna Jacobson, Petitioners,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, Honorable Joseph D. Howe, a judge thereof, Respondent Judge.**

**Todd Harry STEINHOFF, Neil C. Steinhoff and Judith B. Steinhoff, Real Parties in Interest.**

**1 CA–SA 202.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 22, 1987.

Gallagher & Kennedy by Michael L. Gallagher, Judith A. Morse, Phoenix, for petitioners.

Jones, Skelton & Hochuli by William R. Jones, Kathleen L. Wieneke, Phoenix, for real parties in interest.

GRANT, Judge.

Respondent Todd Steinhoff (Steinhoff), a minor, had been drinking when he lost con-

trol of his parents' car while driving with three friends as passengers. One of his friends, Craig Jacobson (Jacobson), was rendered quadriplegic. Jacobson and his parents filed suit against Steinhoff and his parents. In discovery, Jacobson sought copies of Steinhoff's parents' tax returns for the past five years, in an effort to determine their financial worth relevant to a claim for punitive damages. Jacobson maintained that since Steinhoff had been driving his parents' car with their permission, the family purpose doctrine applied to render them liable for Steinhoff's negligence in rolling the car, and to render them liable for punitive damages as well. Jacobson's motion to compel discovery of the Steinhoffs' tax returns was denied, thus giving rise to this special action.

Jacobson asserts that, since the family purpose doctrine imputes liability to the parental providers of a car for their child's negligence in its use, liability for punitive damages should also be imputed to the parents. Jacobson relies on the theory of agency, upon which the family purpose doctrine is largely based, and claims that under the doctrine of respondeat superior, a master is liable, even for punitive damages, if the tort of his employee is committed within the course and scope of employment. Jacobson argues that since the car was used for the purpose for which it was provided when the accident occurred, the parents should be liable for the negligence of their son, even extending to punitive damage liability. We accepted jurisdiction of this special action, even though we agree with the trial court's ruling, because the issue raised is one of first impression, it is a matter of statewide concern, and it is purely an issue of law. *United States v. Superior Court*, 144 Ariz. 265, 697 P.2d 658 (1985).

Arizona adopted the family purpose doctrine in 1919, *Benton v. Regeser*, 20 Ariz. 273, 179 P. 966 (1919), clearly noting the agency rationale for the doctrine. We have since stated the doctrine is to be applied broadly, *Brown v. Stogsdill*, 140 Ariz. 485, 487, 682 P.2d 1152, 1154 (App.1984); *Pesqueira v. Talbot*, 7 Ariz.App. 476, 480, 441 P.2d 73, 77 (1968). The doctrine "holds the owner, or person with control of the vehicle, or 'head of the family,' liable for the negligent driving of a minor child or the spouse using the vehicle with the parent's or owner-spouse's permission, but for the driver's own pleasure or business." E. Harper, F. James & O. Gray, *Law of Torts* § 8.13 at 595 (2d ed. 1986). The doctrine is based on principles of agency, although insecurely so, since the "agency for pleasure" concept does "not square with established principles of agency law." *Pesqueira*, 7 Ariz.App. at 479, 441 P.2d at 76. Despite its reliance on agency principles for credibility, its social usefulness is its primary justification; it provides for an injured party's recovery from the financially responsible person—the family head—deemed most able to control to whom the car is made available.

> There is obviously an element of unblushing fiction in this manufactured agency; and it has quite often been recognized, without apology, that the doctrine is an instrument of policy, a transparent device intended to place the liability upon the party most easily held responsible.

W. Prosser and P. Keeton, *Law of Torts* § 73 at 524.

Thus, while recognizing the family purpose doctrine's basis in agency principles, we also note that the doctrine is the purest of fictions, defensible only because of its social usefulness. Any attempt to analogize other agency doctrines to it must be viewed with caution and approached with restraint.

■ Punitive damages have a rationale entirely separate from the family purpose doctrine. The punitive damage concept is not to be stretched. *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986). Punitive damages are intended, of course, to punish a wrongdoer and to "deter others from emulating his conduct." *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986). Arizona's formulation of the punitive damage principle rests on the finding that the defendant's wrongful conduct was guided by evil

motives. *Rawlings*, 151 Ariz. at 162, 726 P.2d at 578. Neither *Rawlings* nor *Linthicum* address the proposition of imputing punitive liability to a parent or principal for a child's or agent's negligence. We must therefore examine that proposition in light of *Rawlings'* and *Linthicum's* directives to narrow the availability of punitive damages. Like the Supreme Court, we also are wary of overextending such availability, knowing that this would dull "the potentially keen edge of the doctrine as an effective deterrent of truly reprehensible conduct." *Linthicum*, 150 Ariz. at 331, 723 P.2d at 680, quoting *Tuttle v. Raymond*, 494 A.2d 1353 (Me.1985); *see also Gurule v. Illinois Mut. Life & Cas. Co.*, 152 Ariz. 600, 601, 734 P.2d 85, 86 (1987).

The Wisconsin Supreme Court expressed a similar concern, stating that the

concept of punitive damages embodies a rule for individualized punishment of a wrongdoer whose conduct toward the plaintiff is particularly outrageous. Implicit in this concept is the notion that, where punishment is to be exacted, it must be certain that the wrongdoer being punished because of his conduct actually caused the plaintiff's injuries.

*Collins v. Eli Lilly Co.*, 116 Wis.2d 166, 183, 342 N.W.2d 37, 54, *cert. denied sub nom E.R. Squibb & Sons, Inc. v. Collins, aka Gastrow, et al.*, 469 U.S. 826, 105 S.Ct. 107, 83 L.Ed.2d 51 (1984).

Arizona cases have held that punitive damages are sometimes available against a principal for the tort of an agent through respondeat superior. This is a generally recognized variation from the rule that punitive damages are available only against the wrongdoer himself. The rule in Arizona has been that a principal is liable if his agent's tort occurred "in furtherance of the employer's business and within the scope of the agent's employment." *Echols v. Beauty Built Homes*, 132 Ariz. 498, 502, 647 P.2d 629, 633 (1982). Where there is a clearly defined master-servant relationship a stronger argument for imputed punitive damage liability is proper because the master defines the scope of employment, often in quite specific terms, and will often close-

ly supervise the servant's activities in the scope of that employment. The master thus has a greater ability to control the servant's actions and prevent the negligent or wilful tort. A parent, on the other hand, frequently has no idea how the car he or she provides is being used and has no direct means of controlling its use. The Restatement rule on this issue, normally persuasive, has been rejected in Arizona in favor of the principle allowing punitive damages against the employer for acts of the employee if committed in furtherance of the employer's business and in the scope of employment. *Wiper v. Downtown Development Corp.*, 152 Ariz. 309, 310, 732 P.2d 200, 201 (1987). *But see Restatement (Second) of Torts* § 909 (1979). Whether the recent case of *Linthicum v. Nationwide Insurance Co.* foreshadows a shift by the Arizona Supreme Court to the Restatement view is an issue we do not reach in this case.

As an ancillary issue, petitioners argue that parental liability for punitive damages for their child's negligent driving will encourage parents to more closely supervise their children. This surveillance rationale, generally encouraging employers to more closely control their employees, obtains only where there is an "independent ground upon which the employer's liability may be based." *Wiper*, 152 Ariz. at 312, 732 P.2d at 203. No such grounds against respondent parents appear in the pleadings. As noted, common to every respondeat superior situation is the fact that an employer receives some economic benefit from the employee's labor and specifically defines for the employee the scope of employment. It is here that the doctrine of respondeat superior departs from the family purpose doctrine, wherein an automobile is provided simply for the convenience of family members. We believe the difference in purpose is sufficient to justify a difference in liability.

■ Thus, the concept of punitive damages is not easily applied to general principles of agency or vicarious liability.

It is intended as a personal penalty for the actual wrongdoer, and its extension to others who were not themselves the actual perpetrators of the conduct should be limited. As stated, punitive damages may be imputed to an employer or a principal whose employee or agent commits acts with an evil mind, and there are sound justifiable reasons for doing so. *See Gurule v. Illinois Mut. Life and Cas. Co.*, 152 Ariz. 600, 734 P.2d 85 (1987). We do not believe that there are justifiable reasons to extend punitive damages to the parental providers of a family car under the family purpose doctrine.

Petitioners present a syllogistic argument: since punitive damages are available against a principal for the tort of his agent, and since the provider of the family car is deemed a principal providing a car for his "agent," the child, punitive damages ought to be available against the parent for the negligence of the child, if the car was being used for a purpose which the parent intended. While this argument seems facially logical, in fact it is a *non sequitur* which ignores the differences between the bases of punitive damages and the family purpose doctrine.

■ First, the family purpose doctrine does not rest on a classical theory of agency. It has never purported to rest on a true agency relationship. Although alluding to agency for legal legitimacy, its practical purpose is to provide reparation for an injured party from the closest financially responsible party to the wrongdoing minor. And as "the issue of agency should not turn on the delicacy of the principal's choice of words," *Johnson v. Peterson*, 38 Cal.App.3d 619, 622–23, 113 Cal.Rptr. 445, 447 (1974) so too it should not turn on the petitioners'. Any attempt to analogize the family purpose doctrine to the doctrine of respondeat superior is therefore flawed in its inception, since the two doctrines are, in a realistic analysis, fundamentally different although they can have similar results.

■ Second, it is clear that, except for respondeat superior, punitive damages may be assessed only against the actual wrongdoer, the one who personally had the "evil mind." *Gurule v. Illinois Mut. Life and Cas. Co.*, 152 Ariz. 600, 734 P.2d 85 (1987). Petitioners do not allege a theory of negligent entrustment against respondent parents. No outrageous act by the respondent parents is alleged in the pleadings. We thus hold that punitive damages are not recoverable under the family purpose doctrine against parents for their child's negligent driving. We shall not stretch the concept of agency to camouflage the clear-cut rules for punitive damages and thereby say justice is done.

We note that at least one other court has recently faced this question. We agree with the North Carolina Court of Appeals that

> [a]lthough the family purpose doctrine has long been established in this State, it is not without its limits.... We are unwilling to say that when a driver uses a family member's automobile wilfully, wantonly, or maliciously to injure another that the family purpose doctrine should be applied so as to allow recovery of punitive damages against the owner based on such use.

*Byrne v. Bordeaux*, 85 N.C.App. 262, 265, 354 S.E.2d 277, 279 (1987).

Finally, we note that the family purpose doctrine itself has come under increasing criticism in recent years. Arizona is in a minority of jurisdictions that continue to adhere to it; many states have rejected its purely fictional agency concept altogether, preferring to impose explicit statutory liability on parents for the negligent driving of their children.[1] It is significant to note that at least one jurisdiction, California, has chosen to limit drastically such general imputed negligence liability, and has ex-

---

1. The following states have adopted the family purpose doctrine: Arizona, Colorado, Connecticut, Georgia, Kentucky, Nebraska, New Mexico, North Carolina, North Dakota, Oregon, South Carolina, Tennessee, Washington, West Virginia. Prosser, § 73, at 524 n. 15. It does not apply in approximately three-quarters of the states. *Id.* at 526 n. 39.

empted parents from imputed exemplary and punitive damage liability altogether. Cal.Veh.Code § 17709 (Deering 1971). We are thus one of several courts which recognize that punitive damages should not be extended under the family purpose doctrine to innocent parties. The order of the trial court denying the motion to compel discovery is affirmed.

Jurisdiction granted, relief denied.

GREER, P.J., and FROEB, J., concur.