821 P.2d 1384

**FIRST INTERSTATE BANK OF ARIZONA, N.A., Plaintiff–Appellee,**

**v.**

**TATUM AND BELL CENTER ASSOCIATES, an Arizona general partnership; James E. Meadows, if he be living, his unknown heirs and devisees if he be dead; Jennifer M. Meadows, wife of James E. Meadows, if she be living, her unknown heirs and devisees if she be dead; Cardon Meadows Development**

**Corporation, an Arizona corporation; Cardon Oil Company, an Arizona general partnership; Wilford and Phyllis Cardon; Elijah and Marjorie Cardon; Craig and Deborah Cardon, Defendants–Appellants.**

**No. 1 CA–CV 89–087.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 22, 1991.

Reconsideration Denied Jan. 7, 1992.

Streich, Lang, Weeks & Cardon, P.A. by William S. Hawgood II, Marcia Horn Yavitz, Timothy J. Thomason, Robert E. Miles, Phoenix, for plaintiff-appellee.

Beus, Gilbert & Morrill by Paula S. Bickett, Martin A. Aronson and Neil Vincent Wake, Phoenix, for defendants-appellants.

## OPINION

FIDEL, Presiding Judge.

When property is sold at a trustee's sale for a price too low to relieve the debt that it secures, the lender may sue the borrower for the deficiency. The borrower, however, is statutorily credited with the property's fair market value if the trustee's sale has brought a lesser sum. This fair market value credit serves to protect the borrower against a deficiency artificially inflated by a deflated trustee's sale.

Guarantors as well as borrowers are extended a fair market value credit under the express terms of Arizona's current deficiency statute, Ariz.Rev.Stat.Ann. § 33–814(A) (Supp.1990) ("A.R.S."). The central question of this appeal is whether guarantors were implicitly extended such protection under a 1984 version of the same statute.

### I

Appellant Tatum and Bell Center Associates (hereinafter T & B), a general partnership, was formed to develop a shopping center on the southwest corner of Tatum Boulevard and Bell Road in Phoenix, Arizona. In September 1985, appellee First Interstate Bank of Arizona, N.A. (herein-after First Interstate) agreed to loan T & B a sum of money secured by a first deed of trust on the land. The loan was guaranteed by appellants James E. and Jennifer M. Meadows, Cardon Meadows Development Corporation, and Cardon Oil Company, a general partnership, and by other guarantors not party to this appeal.[1]

An initial loan disbursement of approximately $7,800,000 enabled T & B to acquire the land; however, T & B did not find anchor tenants, did not begin construction, and eventually defaulted on the loan. At a trustee's sale on February 18, 1987, First Interstate bought the land for $7,040,000 and soon thereafter sold it to a third party purchaser for $8,015,040.

Crediting T & B and its guarantors with the proceeds of the third party sale, First Interstate brought this suit for the deficiency balance. Defendants asserted in their answer that the deficiency balance was either nonexistent or less than First Interstate claimed because First Interstate had failed to buy or resell the property for fair market value. In a counterclaim defendants also alleged that, by this failure, First Interstate had breached its fiduciary duty and its duty of good faith.

Upon First Interstate's motion for summary judgment, the trial court dismissed the defendants' counterclaim with prejudice. Later, upon consideration of the deficiency statute's 1988 amendment and after concluding that the fair market value credit of section 33–814(A) did not extend to guarantors, the trial court granted First Interstate summary judgment against the guarantors on its complaint.[2] The trial court entered judgment in favor of ·First Interstate against the guarantor defendants and their principals in the principal sum of $589,011.75 with interest at the default rate provided in the note. The court also

---

1. Cardon Oil Company general partners Wilford, Elijah, and Craig Cardon are also appellants, as are their wives Phyllis, Marjorie, and Deborah Cardon. Although the trial court record indicates that the debtor, T & B, is now defunct, and although First Interstate asserts that T & B is not a party to this appeal, T & B is listed in the notice of appeal and is thus included. A similarly named but separate entity, Hall's Tatum and Bell Center Associates Limited Partnership, was among the guarantor-defendants in the trial court, but is not a party to the appeal.

2. The trial court dismissed First Interstate's complaint against T & B, the borrower, without prejudice.

awarded First Interstate collection costs and attorneys' fees with interest at the statutory rate.

## II

This case presents a question of statutory interpretation. To resolve it we examine not only the 1984 statute applicable at the time this suit arose, but also two subsequent amendments. The 1984 version of A.R.S. § 33–814 provided:

A. ... [W]ithin three months after the date of sale of trust property under a trust deed pursuant to section 33–807, an action may be maintained to recover a deficiency judgment for the balance due on the contract or contracts for which the trust deed was given as security. Such deficiency judgment shall be for an amount equal to the sum of the total amount owing the beneficiary as of the date of the sale, as determined by the court and the amount owing on all prior liens and encumbrances with interest, *less the fair market value of the trust property on the date of the sale as determined by the court or the sale price at the trustee's sale, whichever is higher....*

B. If no action is maintained for a deficiency judgment, as provided for in subsection A of this section, the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the debt and no right to recover a deficiency in any action shall exist.

*See* 1984 Ariz. Sess. Laws 515, 524 (emphasis added).[3]

In 1988, the legislature amended section 33–814 to expressly deny this fair market value credit to guarantors:

B. The obligation of a person who is not a trustor to pay, satisfy or purchase all or part of the balance due on a contract secured by a trust deed, *including an obligation evidenced by a written guarantee* ... may be enforced by one

or more actions separate and independent of a trustee's sale or action for a deficiency, whether commenced or maintained before, during or after the trustee's sale. *Such action or actions are not subject to the time or fair market value limitations of subsection A. ...* A judgment in an action under this subsection shall be reduced only by payments received by the beneficiary, including any credit bid at the trustee's sale....

1988 Ariz. Sess. Laws 111, 112 (emphasis added).

The 1988 amendment applied only to actions commenced after the effective date of the act. *Id.* § 2. However, First Interstate argued in the trial court that the amendment explicitly embodied the implicit intent of earlier versions of the act.

In 1989, after the trial court had entered judgment for First Interstate, the legislature reversed track in a further amendment of section 33–814:

A. ... [W]ithin ninety days after the date of sale of trust property under a trust deed pursuant to section 33–807, an action may be maintained to recover a deficiency judgment against any person directly, indirectly or contingently liable on the contract for which the trust deed was given as security *including any guarantor* of or surety for the contract and any partner of a trustor or other obligor which is a partnership. In any such action against such a person, the deficiency judgment shall be for an amount equal to the sum of the total amount owed the beneficiary as of the date of the sale, as determined by the court and the amount owed on all prior liens and encumbrances with interest, *less the fair market value of the trust property on the date of the sale as determined by the court or the sale price at the trustee's sale, whichever is higher.*

---

**3.** Arizona first enacted section 33–814 in 1971. 1971 Ariz. Sess. Laws 406, 423–24. The fair market value credit provision of the original version did not differ from the fair market value credit provision of the 1984 version in any respect that is pertinent to the issues of this suit. Neither version indicated expressly whether the credit was limited to borrowers or extended also to guarantors.

1989 Ariz. Sess. Laws 741, 741 (emphasis added).

The 1989 amendment not only made the fair market value credit expressly applicable to guarantors; in further contrast to the purely prospective 1988 amendment, it did so retroactively:

> This act applies retroactively *to all actions under section 33–814, Arizona Revised Statutes, commenced before the effective date of this act and prospectively to all other actions....*

*Id.* § 3.[4]

### III

■ First Interstate argues that under the 1984 statute, it had the right to collect its deficiency from the guarantors without application of the fair market value credit. First Interstate recognizes that the 1989 statute extends the fair market value credit to guarantors, but objects that retroactive application would impair its vested, substantive rights and encroach upon the judicial function of the appellate courts. We need not reach these issues of retroactive application because we conclude that the fair market value provision of the 1984 statute protected guarantors.

The 1984 statute applied to actions "to recover a deficiency judgment for the balance due on the contract or contracts for which the trust deed was given as security." 1984 Ariz. Sess. Laws 515, 524. First Interstate argues that the statute was inapplicable by its terms because the guaranty agreements were not "contracts for which the trust deed was given as security." The deed of trust, according to this argument, secured T & B's contractual obligation to repay the loan, but did not secure the independent agreements by the guarantors; the guaranty agreements were not *secured* by the deed of trust, but rather served as security in addition to the deed of trust. *See Kintner v. Wolfe*, 4 Ariz.App. 212, 214, 419 P.2d 116, 118 (1966), *vacated on other grounds*, 102 Ariz. 164, 426 P.2d 798 (1967) ("[A]ll of the authorities appear to concur that the contract of guarantee is a contract separate and distinct from the contract evidencing the principal obligation.").

Appellants mount a textual argument to the contrary based on various provisions in the loan documents, but we will assume for the purpose of disposition that First Interstate's premise is correct: The trust deed did not secure the guaranties. This premise, however, is beside the point. Contrary to First Interstate's argument, the 1984 version of section 33–814(A) did not refer unambiguously to actions on contracts for which the trust deed was given as security. It referred rather to actions "to recover a deficiency judgment for the balance due on the contract or contracts for which the trust deed was given as security." 1984 Ariz. Sess. Laws 515, 524. First Interstate's action against the guarantors may not be an action *on* the T & B contract secured by the trust deed. It is, however, an action to recover a deficiency judgment *for the balance due on* the T & B contract.

This latter point is bolstered by subsection B of the 1984 version of section 33–814. Thereunder, "[i]f no action is maintained for a deficiency judgment, *as provided for in subsection A of this section,* the proceeds of the sale, regardless of amount, shall be deemed to be in *full satisfaction* of the debt and no right to recover a deficiency *in any action* shall exist." 1984 Ariz. Sess. Laws 515, 524 (emphasis added). We interpret this provision to mean that a lender's only avenue to recover a deficiency after a trustee's sale was to institute an action under section 33–814(A). If such an action were not instituted, the sale would be deemed to have satisfied the debt in full; if such an action were instituted, whether against borrower or guarantor, subsection A's fair market value credit would apply.

We find this interpretation clear enough when subsections A and B of the 1984 statute are read together. However, assuming some ambiguity on these points, we

---

**4.** The statute has once more been amended since oral argument was heard. *See* 1990 Ariz. Sess. Laws 1489, 1492. The 1990 amendment, however, is not pertinent to the issues of this appeal.

find our interpretation reinforced in two respects.

First, application of the fair market value credit to guarantors serves the primary purpose of the statute, which from the outset has been to prohibit a creditor from seeking a windfall by buying property at a trustee's sale for less than fair market value. *Cf. Kries v. Allen Carpet, Inc.*, 146 Ariz. 348, 351, 706 P.2d 360, 363 (1985) (finding that the legislature's purpose in enacting our redemption statutes, A.R.S. §§ 12–1281 to –1289, was to discourage bids that did not reflect the true value of the property). *See also First Interstate Bank of Nev. v. Shields*, 102 Nev. 616, 730 P.2d 429, 430–31 (1986) (The fair market value credit in Nevada's deficiency statutes, Nev.Rev.Stat. §§ 40.451 to –459 (1986), applied to guarantors as well as borrowers because one of the purposes of the deficiency statutes was to prohibit a creditor from obtaining a windfall.).[5]

Our interpretation is also reinforced by comparison of the 1988 and 1989 amendments to section 33–814. The legislative history suggests that the 1988 amendment was intended to expand the exposure of guarantors and that the 1989 amendment was intended to reverse that expansion and to restore a protection that guarantors originally had enjoyed.[6] And even more persuasive than the legislative history is the manner in which the two amendments were cast. The 1988 amendment was made explicitly prospective, suggesting a change from prior law; the 1989 amendment was made expressly retroactive, suggesting an effort to utterly cancel the 1988 amendment and reinstate the law as it had been before.

We hold that the fair market value credit of the 1984 version of section 33–814 applied to guarantors and that First Interstate must extend such a credit to appellants in calculating what, if any, deficiency they are obliged to pay.

## IV

Our conclusion that appellants were entitled statutorily to a fair market value credit makes it unnecessary to decide whether the trial court erred in dismissing appellants' counterclaim. As appellants' counsel conceded during oral argument, our ruling effectively moots the counterclaim that First Interstate breached its fiduciary duty or acted in bad faith when it failed to buy or resell the land for fair market value.

■ We must, however, consider an issue that will recur on remand if, after fair market value is credited against the debt, a deficiency remains to be collected from the

---

5. First Interstate argues that it did not obtain a windfall in this case; after selling the land to a third party purchaser, it credited the guarantors with the whole of that sale price, rather than crediting the guarantors with the lesser amount that it bid at the trustee's sale. This argument, however, mistakes the issue. Our statutory interpretation does not turn on the question whether First Interstate achieved a windfall in this transaction. Rather, the question is whether lenders would have the means to achieve windfalls from guarantors if guarantors were not extended the fair market value credit.

6. The sponsor of the 1989 amendment, Senator Lester Pearce, stated that its purpose was to reverse legislation passed the prior year. Ariz.S. 39th Leg., 1st Sess., Minutes of Comm. on Banking & Insurance (Apr. 13, 1989). David Udall, an attorney speaking in favor of the 1989 amendment, testified that "the old law ... did not preclude the guarantors from having the benefit of the fair market value." *Id.* Another supporter, developer Jay Ellingson, testified that the 1989 amendment would reinstate the equality between borrower and guarantor that had been removed by the amendment of the prior year. Ariz. S. 39th Leg., 1st Sess., Comm. on Commerce, Labor, Insurance & Banking (Mar. 8, 1989).

As for banking industry representatives, they were inconsistent in describing the impact of the 1988 amendment. On one hand, in testimony opposing the 1989 amendment, Sam Applewhite, an attorney for the Arizona Banker's Association and a drafter of the 1988 amendment, testified that "[l]ast year's law was just to clarify the language." *Id.* On the other hand, the director of the Arizona Banker's Association, Gordon Murphy, who also participated in drafting the 1988 amendment, described the 1988 amendment as if it had accomplished a substantial change: "[A]fter a number of years where the guarantors were able to skirt their obligations, the Legislature last year, by amending the deed of trust statute for guarantors on commercial loans only, made it possible for the lender to stand up to the guarantors and ask them to stand up to their obligations." *Id.*

guarantors. The parties dispute whether a deficiency judgment should extend not only to Wilford, Elijah, and Craig Cardon, the general partners in guarantor Cardon Oil Company, but also to their marital communities and their wives, who did not sign the guaranties.

The trial court entered personal judgment against Phyllis, Marjorie, and Deborah Cardon; it exposed not only their community property but their separate property to collection. This aspect of the judgment was clearly wrong, and First Interstate makes no effort to defend it. A.R.S. § 25–214 (1991) provides in part:

A. Each spouse has the sole management, control and disposition rights of his or her separate property.

B. The spouses have equal management, control and disposition rights over their community property, and have equal power to bind the community.

Under section 25–214(A), one spouse, even when binding the marital community, may not bind the separate property of the other spouse.

The question remains whether the Cardon husbands bound their marital communities when, as general partners in Cardon Oil, they guaranteed the debt of T & B. Again we find the statutory answer clear. A.R.S. § 25–214(C) provides:

C. Either spouse separately may acquire, manage, control or dispose of community property, or bind the community, except that joinder of both spouses is required in any of the following cases:
. . .
2. Any transaction of guaranty, indemnity or suretyship.

First Interstate attempts to evade this statute by arguing that it pertains only when a spouse attempts to bind the marital community by signing a guaranty and not when, as here, the spouse binds a general partnership to a guaranty. In the latter circumstance, the argument continues, if a general partner's interest belongs to his marital community, the marital community is likewise responsible for partnership debt.

We find this argument strained and unpersuasive. In effect, First Interstate argues that a marital community that benefits from a partnership interest cannot raise lack of one spouse's signature as a basis to disaffirm partnership debt. This court has already rejected such an argument:

While there may be circumstances where a spouse may be estopped from disaffirming a contract, we are constrained from adopting a rule which would preclude a spouse from disaffirming any contract from which the community has received benefits. To adopt such a rule would effectively emasculate the requirements of A.R.S. § 25–214(C).

*Consolidated Roofing & Supply Co. v. Grimm,* 140 Ariz. 452, 458, 682 P.2d 457, 463 (Ct.App.1984).

We found in *Grimm* that the plain language of section 25–214(C) "requires that both spouses must execute a guaranty in order to bind the community." *Id.* Our supreme court has found that the statute "was intended to protect both spouses' interest in their common property." *Geronimo Hotel & Lodge v. Putzi,* 151 Ariz. 477, 480, 728 P.2d 1227, 1230 (1986). We find in this case that Phyllis, Marjorie, and Deborah Cardon are entitled to such protection of their community property and, accordingly, that the marital communities of Wilford, Elijah, and Craig Cardon are not liable for any deficiency that may remain after application of the fair market value credit upon remand.

## V

We reverse summary judgment entered for First Interstate on its complaint and remand for further proceedings consistent with this opinion. We award appellants attorneys' fees pursuant to A.R.S. § 12–341.01(A) in an amount to be determined upon their compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.

CONTRERAS and GERBER, JJ., concur.