913 P.2d 1097

**M.S. MacCOLLUM, M.D., Plaintiff–Appellant, Cross–Appellee,**

v.

**John W. PERKINSON and Verna Perkinson, husband and wife; Douglas E. Smith and Jane Doe Smith, husband and wife, Defendants–Appellees,**

**Charles L. Regester and Joan Regester, husband and wife; Defendants–Appellees, Cross–Appellants.**

No. 1 CA–CV 94–0001.

Court of Appeals of Arizona, Division 1, Department C.

March 5, 1996.

As Corrected March 13, 1996.

The Law Office of John R. Tellier by John R. Tellier, Phoenix, and Hammond, Natoli & Tobler, P.C. by Phil B. Hammond, Phoenix, for Appellant/Cross–Appellee MacCollum.

Grant, Williams, Lake & Dangerfield, P.C. by L. Richard Williams, Mark C. Dangerfield, Phoenix, for Appellees Smith.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Richard M. Lorenzen, Phoenix, for Appellees/Cross–Appellants Regester.

## OPINION

TOCI, Judge.

The first issue raised in this appeal is whether only one spouse's signature on a partnership note and deed of trust is sufficient to bind the marital community. We conclude that because the marital community has only a personal property interest in partnership property, the marital community does not acquire "an interest in real property" when the partnership acquires real property. Thus, one spouse's signature on a partnership note and deed of trust is sufficient to bind the marital community.

The second issue raised is whether the trial court erred in denying MacCollum's motion for leave to amend his complaint to state, among other claims, a claim for relief for violation of the securities fraud statutes. We conclude that MacCollum's proposed amended complaint stated a claim for relief on all theories alleged, including the theory that the promissory note executed by Regester/PST Enterprises is a "security" under the securities fraud statutes. The trial court therefore erred in denying the motion for leave to amend.

## I. FACTS AND PROCEDURAL BACKGROUND

In June of 1986, M.S. MacCollum, M.D., received a Private Offering Memorandum ("POM") from defendant Charles L. Regester. The POM offered "investment interests" in a promissory note. The invested funds were to be used to purchase real property for development, lease, and resale. According to the POM, the investors were to receive the principal invested, interest on the principal, and "bonus interest" from the lease, refinancing or sale of the property. Although the POM stated that the promissory note might or might not be secured, it also

stated that in the event of default, investors could "enforce their rights on the real property and other assets of Borrower [Regester] to recover their investment." The M.S. MacCollum, M.D. Limited Pension Plan ("MacCollum Plan") responded to the POM by delivering a check in the amount of $100,000 to Regester.

In September of the same year, the Regester/PST Enterprises general partnership was formed. Its partners were Charles L. Regester, and PST Holdings, both of whom had a fifty percent interest in the partnership. PST Holdings, a general partnership, was composed of John W. Perkinson, Douglas E. Smith, and Anthony L. Tominac. Regester then informed the investors in writing, including the MacCollum Plan, that the partnership would purchase property in Mesa.

After the Regester/PST Enterprises partnership purchased the Mesa property, Regester prepared a promissory note for $100,000, payable to the MacCollum Plan, secured by a "Junior Deed of Trust." The entire unpaid principal balance of the note was to be paid on or before November 19, 1991. The maker of the note was "Register/PST Enterprises." Although Regester, Perkinson, Smith, and Tominac signed the note, it was not signed by any of the partners' spouses. The deed of trust identified Regester/PST Enterprises as the trustor. The investors, including the MacCollum Plan, were the beneficiaries.[1]

Although Regester had earlier notified the investors in writing that the purchase of the Mesa property would be financed in part with funds from the partnership, the balance of the purchase price consisted of a partnership loan. Regester/PST Enterprises borrowed approximately $1,250,000 from the Arizona Bank and secured the loan with a first deed of trust on the Mesa property. The partnership was unable to pay the Arizona Bank when the loan fell due in June of 1988. As a result, the Arizona Bank threatened legal action.

To prevent foreclosure, Lou Regester Furniture Co., Inc., a company controlled by Regester, purchased the note and deed of trust and obtained an assignment of the bank's interest. Regester financed the purchase of the Arizona Bank note and deed of trust by a loan from Valley National Bank. Lou Regester Furniture Co. then proceeded with a trustee's sale on August 30 or 31, 1989, at which it purchased the property. This transaction extinguished the investors' second deed of trust lien securing payment of their promissory notes.

Alleging that the MacCollum Plan note was not paid on its due date of November 19, 1991, MacCollum filed a complaint seeking recovery under the promissory note.[2] The defendants' answers asserted that the note was actually an "equity investment" that was not to be paid until the property was sold, leased, or refinanced. The defendants contended that, because none of these events occurred, they had no liability.

Both parties attempted to narrow the issues for trial. MacCollum moved for partial summary judgment. Asserting that the defendants had defaulted on the note, he requested judgment on the note for the unpaid principal balance and interest against the defendants and their spouses. Defendants moved for summary judgment, contending that the partners' marital communities were not liable for the promissory note obligations.

The trial court granted both motions. It held that the promissory note evidenced a debt—a loan to the partnership. Thus, the partnership was obligated because the due date on the note had passed. The trial court concluded, however, that under *Meritor Savings Bank v. Camelback Canyon Investors*, 783 F.Supp. 455 (D.Ariz.1991), joinder of both spouses was required by Ariz.Rev.Stat. Ann. ("A.R.S.") section 25–214(C) (1991). The court ruled that, because the partners' spouses had not executed the promissory note, the partners' marital communities were not liable for the MacCollum note obligations.

1. Although the second deed of trust was executed on November 18, 1986, it was not recorded until May 18, 1988.

2. The MacCollum Plan was terminated on January 31, 1989, and its promissory note was distributed to MacCollum.

Before the summary judgment motions were argued, MacCollum moved to file a second amended complaint. He generally sought to assert additional claims based on the theory that his note was a security. The court denied the motion and later denied MacCollum's motion for reconsideration. After summary judgment was entered, MacCollum filed a motion for judgment on the pleadings, which the court granted. The court entered judgment on the promissory note in favor of MacCollum and against defendants Regester, Perkinson, Smith and Tominac, but not against their marital communities. This appeal followed.

## II. DISCUSSION

### A. Liability of Marital Communities

The first issue presented is whether A.R.S. section 25–214 requires the signature of the non-partner spouse on a partnership promissory note and deed of trust to subject the marital community to liability for a default in such instruments. Because this is a question of statutory interpretation, we review it *de novo*. *Blum v. State*, 171 Ariz. 201, 204, 829 P.2d 1247, 1250 (App.1992).

In general, community property is liable for debts incurred for the benefit of the community. A.R.S. § 25–215(D) (1991). A presumption in favor of a community obligation arises "when either spouse incurs a debt during marriage for the benefit of the marital community." *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 198, 805 P.2d 1012, 1019 (App.1990). This presumption must be overcome by clear and convincing evidence that the debt is the separate obligation of one of the spouses. *Id.*

Additionally, although generally spouses have equal rights to bind the community property, certain transactions will not bind the community unless both spouses *join in* the transaction. A.R.S. § 25–214. These include "[a]ny transaction for the acquisition, disposition or encumbrance of an interest in real property" and "[a]ny transaction of guaranty, indemnity or suretyship." A.R.S. § 25–214(C)(1), (2).

The trial court, relying on *Meritor Savings,* agreed with defendants that this transaction was one involving the acquisition and encumbrance of real property. Thus, according to the trial court, the joinder of the partners' spouses was required to subject their respective communities to liability for the transaction. We disagree. We recently rejected a similar argument in *Chase Bank of Arizona v. Acosta,* 179 Ariz. 563, 880 P.2d 1109 (App.1994).

In *Acosta,* we held that, even in absence of joinder by the non-partner spouse, a partner's marital community could be held liable for the partnership's debt resulting from a real estate transaction conducted by the partnership. We stated a number of principles that are applicable here. First, the interest of a partner in partnership property is personalty. *Id.* at 572, 880 P.2d at 1118. If community funds are used to acquire a partnership interest, that interest is "community personal property." *Id.* Second, because the community has no interest in specific partnership property, the partner spouse is entitled to deal with partnership assets without the consent of the non-partner spouse. *Id.* Third, the real estate exception in section 25–214(C)(1) "does not apply to a spouse's partnership interest for the simple reason that it is not realty, but personalty." *Id.* Thus, in *Acosta,* we concluded that because the community has no interest in specific partnership assets, it does not "acquire or dispose or encumber real property" when the partnership deals with its assets. *Id.*

The issue of a partner's ability to deal with partnership property free of the community-joinder requirement was dealt with by our supreme court in *Cummings v. Weast,* 72 Ariz. 93, 231 P.2d 439 (1951). There, the court stated:

> When community personal property is invested in a partnership, it retains, as between the spouses involved, its character as community property, but is subject to the primary powers and duties governing the partnership itself, which includes the proper acts of partners inter sese. Such community property is subject to the primary charge of any liabilities to which the partnership may be subjected, however,

and the power of the partnership and its members over the assets ... predominates over any rights which the members of the community may have in regard to the same.

*Id.* at 98–99, 231 P.2d at 443 (citation omitted). A.R.S. 29–226 (1989) (a partner's interest in the partnership is personal property). Consequently, such partnership interest is personalty and is subject to the management and control of either spouse without the joinder of the other. A.R.S. § 25–214; *see also Nationwide Resources Corp. v. Massabni,* 134 Ariz. 557, 562, 658 P.2d 210, 215 (App. 1982).

Defendants nonetheless claim that *First Interstate Bank v. Tatum and Bell Center Assoc.,* 170 Ariz. 99, 821 P.2d 1384 (App. 1991), and *Meritor Savings,* are controlling. They assert that these cases stand for the proposition that the plain language of A.R.S. section 25–214(C) mandates that both spouses join in any transaction involving real estate in order to bind the marital community. We reject this argument. *Meritor Savings* was erroneously decided. *Tatum and Bell* is distinguishable.

In *Meritor Savings,* a general partnership defaulted on a note secured by real property. 783 F.Supp. at 456. The United States District Court for the District of Arizona held that the marital communities of general partners could not be held liable for the deficiency judgment after the foreclosure sale of the partnership real property. The district court relied on the language of A.R.S. section 25–214(C) and this court's opinion in *Tatum and Bell.*

In *Acosta,* we rejected the holding of *Meritor Savings.* 179 Ariz. at 572 n. 11, 880 P.2d at 1118 n. 11. The court in *Meritor Savings* erroneously read *Tatum and Bell* to stand for the proposition that, absent joinder of the partner's spouse, the partner could not bind the marital community through the activities of the partnership. 783 F.Supp. at 457. *Tatum and Bell* does not stand for this proposition. Furthermore, because this is a question of state law, we are not bound to follow

federal decisions. *Orme Sch. v. Reeves,* 166 Ariz. 301, 304, 802 P.2d 1000, 1003 (1990). Accordingly, we turn to the meaning of *Tatum and Bell* in light of *Acosta.*

In *Tatum and Bell,* the general partners of a partnership guaranteed a loan secured by real property. When the partnership defaulted on the loan, the bank judicially foreclosed on the property and brought suit for the deficiency. 170 Ariz. at 100, 821 P.2d at 1385. The defendants claimed, among other things, that any deficiency judgment could not be collected against the marital communities of the general partners. *Id.* at 104, 821 P.2d at 1389. Relying on *Consolidated Roofing & Supply Co. v. Grimm,* 140 Ariz. 452, 682 P.2d 457 (App.1984), we held that the plain language of A.R.S. section 25–214(C)(2) requires that both spouses must execute a guaranty in order to bind the community.[3] Without considering whether *Acosta* and *Tatum and Bell* are reconcilable, *see Acosta,* 179 Ariz. at 576–77, 880 P.2d at 1122–23 (Weisberg, J., concurring, and Grant, J., dissenting), we find that *Tatum and Bell* is distinguishable because it concerned a guaranty while the present case does not.

Here, the partners signed a promissory note binding the partnership to repay a loan to the MacCollum Plan. The loan was intended to purchase and was later secured by real property. Under A.R.S. section 29–226, the partners' interest in this property was a personal property interest rather than an interest in real property. The requirement of A.R.S. section 25–214(C)(1), that both spouses sign "any transaction for the ... encumbrance of an interest in real property," does not apply; the partners' marital communities can be held liable on the signature of only the partner. The trial court therefore erred in entering summary judgment that defendants' marital communities were not liable on the MacCollum note.

## B. Motion to Amend Complaint

MacCollum next contends that the trial court erred in denying his second motion to

---

3. We found that it made no difference that the spouse signed a guaranty binding a general partnership as opposed to a guaranty attempting to bind the marital community. *Tatum and Bell,* 170 Ariz. at 104, 821 P.2d at 1389.

amend his complaint. We review the denial of a motion to amend a pleading for clear abuse of discretion. *Hall v. Romero*, 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984). Misapplication of the law can constitute an abuse of discretion. *City of Phoenix v. Geyler*, 144 Ariz. 323, 329, 697 P.2d 1073, 1079 (1985). To determine if the trial court abused its discretion in denying the amendment, we presume that the facts alleged in the complaint are true. *Maldonado v. Southern Pac. Transp. Co.*, 129 Ariz. 165, 629 P.2d 1001 (App.1981).

■ Rule 15(a), Arizona Rules of Civil Procedure, provides that a party may amend his pleadings once as a matter of course any time before a responsive pleading is served. After that, a party may amend his pleading only by leave of the court. Ariz.R.Civ.P. 15(a). Leave to amend is discretionary, but is liberally granted. *Owen v. Superior Ct.*, 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982).

■ Amendments will be permitted unless the court finds undue delay in the request, bad faith, undue prejudice, or futility in the amendment. *Bishop v. State Dep't of Corrections*, 172 Ariz. 472, 474–75, 837 P.2d 1207, 1209–10 (App.1992). Absent these circumstances, leave to amend a pleading should be granted "[i]f the underlying facts or circumstances relied upon ... may be a proper subject of relief." *Spitz v. Bache & Co. Inc.*, 122 Ariz. 530, 531, 596 P.2d 365, 366 (1979). Denial of leave to amend is generally an abuse of discretion where the amendment merely seeks to add a new legal theory. *Walls v. Arizona Dep't of Public Safety*, 170 Ariz. 591, 597, 826 P.2d 1217, 1223 (App. 1991).

The trial court determined that no factual basis existed for the new theories in MacCollum's amended complaint. Finding that the note was not a security, the trial court dismissed the securities claims. Additionally, the trial court concluded that the transaction was nothing but a commercial loan, thus raising no fiduciary duties. We disagree. We conclude that MacCollum's proposed second amended complaint did allege a claim for relief on all theories alleged, including a violation of securities laws.

## 1. Securities Registration Violations

■ Count Two of the proposed second amended complaint alleges violations of the securities registration statute, A.R.S. section 44–1841 (1994). The statute does not explicitly grant a private cause of action for its violation. Nevertheless, section 44–1841 is a predicate offense for a violation of the racketeering statute, A.R.S. section 13–2314(A) (1989). Because the racketeering laws, specifically section 13–2301(D)(4)(s) (1989), provide for a private cause of action, we think it is implicit that a private cause of action exists for violation of section 44–1841.

■ The definition of security for purposes of the registration statute is broad. It includes "any note." A.R.S. § 44–1801(22) (Supp.1995). The Arizona Supreme Court held in *State v. Tober*, 173 Ariz. 211, 213, 841 P.2d 206, 208 (1992), that, for purposes of A.R.S. sections 44–1841 and 44–1842, "security" means *any note* unless the note in question is specifically exempted by the securities statutes. *Id.* at 212–13, 841 P.2d at 207–08. In reaching this conclusion, the court rejected various judicial tests to determine whether a note is a security. *Id.* The court concluded that the notes sold by the defendants in *Tober* were securities and fell within the registration statutes unless the securities were exempted by A.R.S. section 44–1843 (1994) or 44–1843.01 (1994), or the transaction was exempted by A.R.S. section 44–1844 (1994).

Consequently, under *Tober*, the note in this case is a security, and its registration is required, unless it is exempted by one of the exemption statutes. Here, the trial court found the note to be exempt under A.R.S. section 44–1843(A)(10). The court concluded that because the note was secured by a deed of trust, it fell within that exemption. We disagree.

Arizona Revised Statute section 44–1843(A)(10) is inapplicable to this case. That exemption applies to "[n]otes ... secured by a mortgage or deed of trust on real estate ... if the entire mortgage ... together with all notes ... secured thereby is sold or offered for sale as a unit...." A.R.S. § 44–1843(A)(10). Here, although the transaction

was eventually secured by a junior deed of trust, the trust deed was not part of the transaction as it was offered and sold to the MacCollum Plan. The POM stated that the investors would have no interest in the property and that the promissory note *might or might not* be secured.

Additionally, the securing of the MacCollum Plan note appears to have been an afterthought. Unlike the promissory note finally executed by the defendants, the sample promissory note attached to the POM did not contain the language that the note was to be secured by a deed of trust. Furthermore, although the MacCollum Plan delivered its check on June 27, 1986, the transaction transferring the property to the Register/PST Partnership and securing the note did not occur until much later. The partnership acquired the Mesa property on November 5, 1986; the promissory note and deed of trust executed by the partnership to the MacCollum Plan were dated November 18, 1986. The deed of trust securing the MacCollum Plan note was not recorded until May 18, 1988, almost two years after the MacCollum Plan paid the $100,000 to defendant Regester.

While the note executed by the partnership was ultimately secured by a deed of trust, obtaining a deed of trust at the whim of the borrower does not bring the note within the exemption. Simply put, the MacCollum Plan was not offered and did not purchase a note secured by a deed of trust. Therefore, the trial court erred in ruling that MacCollum's security theory was legally insupportable because of the exemption of A.R.S. section 44–1810(A)(10).

## 2. Securities Fraud

■ Count Three of MacCollum's proposed second amended complaint alleges fraud in the sale of securities, a violation of A.R.S. section 44–1991 (1994). This offense is a predicate act for a private cause of action for racketeering. A.R.S. § 13–2301(D)(4)(r). The analysis for determining whether the note in question is a security under this statute is different from that which we used above under the registration statutes.

The securities fraud statute defines a security in even broader terms than do the registration statutes. The definition of a security for purposes of registration is limited by the statutory language of A.R.S. section 44–1801(22) and the specified statutory exemptions. The securities fraud statute, however, includes the sale of even those securities that are exempted from the registration requirements. A.R.S. § 44–1991. In adopting such a broad definition, however, the legislature did not intend to provide a broad remedy for all securities fraud. *See Reves v. Ernst & Young*, 494 U.S. 56, 61, 110 S.Ct. 945, 949, 108 L.Ed.2d 47 (1990). It has been left to the courts to decide which of the myriad of financial transactions come within the coverage of the securities fraud statute. *Id.* "[W]e are not bound by legal formalisms, but instead take account of the economics of the transactions under investigation." *Id.* Thus, our courts have relied on more specific judicial definitions of security than the extremely general one provided by A.R.S. section 44–1801(22). *See Rose v. Dobras*, 128 Ariz. 209, 211, 624 P.2d 887, 889 (App.1981).

Because Arizona's statutory definition of security is "substantially similar to the definitions found in the Securities Act of 1933 and the Securities Exchange Act of 1934[,] [f]ederal interpretations are often looked to for guidance." *Id.* In *Rose*, Division Two of this court adopted the United States Supreme Court's test, announced in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), for determining whether an instrument is a security. The Supreme Court has since held, however, that the *Howey* test is not to be applied when the instrument involved is a note. *Reves v. Ernst & Young*, 494 U.S. at 64, 110 S.Ct. at 950. Instead, in *Reves*, the court adopted the "family resemblance" test. *Id.* at 65, 110 S.Ct. at 951.

In *Tober*, the Arizona Supreme Court left open the question of whether *Reves* should be applied to A.R.S. section 44–1991. 173 Ariz. at 213 n. 5, 841 P.2d at 208 n. 5. For several reasons, we believe that *Reves* should be applied to determine the meaning of "security" under section 44–1991. First, before *Reves*, we followed the United States Su-

preme Court test in *Howey* to define the meaning of security under A.R.S. section 44–1991. *See Rose,* 128 Ariz. at 211, 624 P.2d at 889. Second, the factors leading the federal courts to place a judicial gloss on the extremely broad definition of security in the civil fraud claims are present when we consider the interpretation of section 44–1991. *Cf. Reves,* 494 U.S. at 60–61, 110 S.Ct. at 948–49. Finally, the restrictions on the application of sections 44–1841 and 44–1842 that led to the *Tober* court's rejection of judicial tests are not present in this case, which involves the interpretation of the broad statutory definition of security contained in section 44–1991.

Because the federal statute defines security to include "any note," the *Reves* test begins with the presumption that a note is a security. *Id.* at 65, 110 S.Ct. at 951. This presumption can be rebutted only by a showing that the note bears a strong resemblance (in terms of the four factors identified in *Reves* ) to an item on the judicially crafted list of instruments that were not intended to be regulated as a security. *Id.* at 63, 110 S.Ct. at 950. Included in this family of non-security notes are "consumer financing notes, notes secured by a home mortgage, notes secured by a lien on a business or its assets, notes reflecting a loan to a bank customer, short term notes secured by an assignment of accounts receivable, and notes which formalize a debt on an open account in a business." *Tober,* 173 Ariz. at 212 n. 3, 841 P.2d at 207 n. 3. If the instrument in question is not sufficiently similar to one of the instruments on the list, the decision whether another category should be added to the list of non-regulated instruments is made by examining the same four Reves factors. *Reves,* 494 U.S. at 66, 110 S.Ct. at 951–52.

Here, we begin with a presumption that the note in question is a security and examine the *Reves* factors to determine if this presumption is overcome. Under the first *Reves* factor, the motivation of the parties, both parties intended to profit from the transaction. Regester's purpose was to raise money to finance a substantial investment. MacCollum's purpose was to profit from the investment through the interest on the note and the potential bonus interest from the lease, refinancing, or sale of the property— the so-called "equity kicker." Thus, this transaction is "most naturally conceived as an investment in a business enterprise rather than as a purely commercial or consumer transaction." *Id.* at 68, 110 S.Ct. at 952–53.

The second *Reves* factor involves the examination of the plan of distribution of the instrument to determine if it is an instrument in which there is common trading or speculation. *Id.* at 66, 110 S.Ct. at 952. Offering and selling to a broad segment of the public is all that is required to establish the requisite "common trading" in an instrument. *Id.* at 68, 110 S.Ct. at 953. *citing Landreth Timber Co. v. Landreth,* 471 U.S. 681, 694, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985) (stock of closely held corporation not traded on any exchange held to be "security"). The defendants assert that the MacCollum note was issued to a single payee, and thus was not available for "common trading." While common trading is not dispositive of this issue, it is a reasonable inference from this record that the POM was marketed to a limited number of investors.[4] Thus, this factor is one that points to the conclusion that the MacCollum Plan note resembles the family of notes that the courts have deemed not be securities.

The third *Reves* factor, the public's reasonable expectations, supports a finding that the note in this case was a security. The essence of a security is its character as an investment. *Id.* at 68–69, 110 S.Ct. at 953. The POM refers to the transaction as an offering for "a limited number of investment interests in a promissory note." Furthermore, the POM states that the notes are securities that are being offered pursuant to private offering exemptions. We think it reasonable for a prospective investor to take the POM at its word.

The fourth *Reves* factor involves an examination of the transaction to determine if

---

**4.** The POM states that the number of investors is "limited" but the record provides no hint as to the meaning of this language. The deed of trust beneficiaries, however, all appear to be health care providers.

there is any risk-reducing factor, such as the existence of another regulatory scheme, that renders application of the Securities Act unnecessary. We find no risk-reducing factor to suggest that the note is not a security. The note is not subject to substantial regulation under other Arizona laws. *See Marine Bank v. Weaver*, 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982) (certificates of deposit insured by FDIC and subject to regulation under banking laws were not securities); *Teamsters v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) (pension plan comprehensively regulated under retirement act, not a security).

Further, the note in question was not secured. Under the original investment scheme stated in the POM, the investors would own no interest in the real estate to be purchased. Neither was there any provision in the POM securing repayment of the promissory notes issued to the investors. Although the defendants later recorded a deed of trust to secure the investors' notes, it was not called for under the original investment scheme.

The defendants rely on *Amfac Mortgage Corp. v. Arizona Mall of Tempe*, 583 F.2d 426 (9th Cir.1978), for the proposition that other courts have found that notes similar to the MacCollum Plan note are not securities. For several reasons, we are not persuaded. *Amfac* involved a construction loan between the lender, Amfac, and the borrower, Arizona Mall, for the construction of a shopping center. Amfac's loan was secured by a promissory note, deed of trust, construction loan agreement, and pledged collateral. After Arizona Mall defaulted in the construction loan agreement, Amfac sued in the district court, alleging that the promissory note executed by Arizona Mall was a security within the meaning of the federal and Arizona securities laws. *Id.* at 428.

The court in *Amfac* concluded, "The form of the obligation supports appellee's position that a commercial loan was involved here and not an investment of risk capital." *Id.* at 433. The court observed, "Nowhere is there any indication that the parties were dealing with securities." *Id.* Furthermore, the court noted that, under the "family resem-

blance" test followed by the Second Circuit (later adopted by the United States Supreme Court in *Reves*), the Amfac note to finance the construction of the mall is clearly related to the family of notes that are deemed to be non-security notes. *Id.* at 431 n. 6.

Here, the defendants have offered no meaningful analysis as to how applying the four *Reves* factors rebuts the presumption that the MacCollum note is a security. They have not, therefore, demonstrated that the note closely resembles the *Reves* "family" of non-security notes. For these reasons, and because we find that only one of the *Reves* factors points away from the conclusion that the MacCollum Plan note is a security, we conclude that the MacCollum note is a security. The plaintiff's claim for relief for violation of the securities laws should not have been dismissed.

### 3. Remaining Claims

Counts Four and Six make out claims for breach of fiduciary duty, breach of the covenant of good faith, and negligent nondisclosure. The trial court denied each of these claims because it found the transaction to be a loan and not a sale of securities. Consequently, according to the trial court, the relationship between the parties could not support the claim. Because we have concluded that the trial court erred in finding that the note was not a security, we also hold that it erred in finding that these claims did not state proper grounds for relief.

Counts One, Five, and Seven make out claims for breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. The trial court denied these claims because MacCollum had already prevailed on its contract claim in his motion for summary judgment. Consequently, it concluded that these claims had already been decided, were redundant, or were superfluous.

The motion to amend, by definition, pertains to the pleading stage of a lawsuit. Because we remand this case, and on remand MacCollum is entitled to plead in the alternative under Rule 8(e), Arizona Rules of Civil Procedure, the redundant nature of his

claims is not fatal at this point. He is entitled to pursue all his theories of recovery to their conclusion at trial. *See Vinson v. Marton & Assoc.*, 159 Ariz. 1, 4, 764 P.2d 736, 739 (App.1988).

### 4. Defendants' Remaining Arguments

Defendants essentially claim that the motion for leave to file a second amended complaint should have been denied because the new claims asserted by MacCollum were inconsistent with his previously asserted breach of contract theory. Parties may plead alternatively and inconsistently. Ariz. R.Civ.P. 8(e); *Tempe Corporate Office Bldg. v. Arizona Funding Servs., Inc.*, 167 Ariz. 394, 398, 807 P.2d 1130, 1134 (App.1991). And a party cannot be forced to elect before the conclusion of trial the theory it will advance or the remedy it will seek. *Vinson*, 159 Ariz. at 4, 764 P.2d at 739.

Furthermore, we find no inconsistency between MacCollum's count for recovery on the promissory note and the other theories alleged in the proposed amended complaint. The defendants first raised the theory that the note did not evidence a loan, but rather was an "equity investment" to avoid paying MacCollum on the note. In essence, the defendants argued that MacCollum's $100,-000 check was an investment in real estate. According to defendants, until the real estate was leased, refinanced or sold, they owed MacCollum nothing.

In response, MacCollum argued that the court should focus on the note's specific promise to pay him the sum of $100,000 plus interest "on or before November 18, 1991, or upon the sale of the entire 'Property'...." MacCollum argued that by this language the defendants unequivocally promised to pay a sum certain on a date certain. In his words, this was not an "equity investment" but "was and remains a loan." According to the defendants, this assertion by MacCollum is inconsistent with his alleged claim that defendants violated the securities statutes. We disagree.

The issue here is whether the note evidencing the loan is a security. In *Reves*, a farmers' cooperative, in need of funds to finance its general business operations, sold to its members and nonmembers uncollateralized promissory notes payable on demand. *Reves*, 494 U.S. at 58, 110 S.Ct. at 947–48. The court concluded that such demand notes were "securities" as that term is used in the federal securities law. *Id.* at 70, 110 S.Ct. at 953–54. Thus, the fact that MacCollum argued that the note was a loan, rather than an "equity investment," is immaterial; there is no legal support for the defendants' argument that a note evidencing a loan can never be a security.

We also reject the defendants' assertion that MacCollum is judicially estopped from claiming that the note is a security. In part, defendants base their argument on MacCollum's earlier representations in this case that the note was not an equity investment. As we observe above, this argument has no merit. Additionally, judicial estoppel applies when a party who has assumed a position in a judicial proceeding assumes an inconsistent position in a subsequent proceeding. *Rosenberg v. Rosenberg*, 123 Ariz. 589, 592, 601 P.2d 589, 592 (1979). MacCollum is not currently asserting a position inconsistent with a position that he asserted and on which he received judicial relief in a prior proceeding. Thus, judicial estoppel does not preclude MacCollum's claims. *See Thompson v. Thompson*, 126 Ariz. 129, 131, 613 P.2d 289, 291 (App.1980).

Finally, defendants assert for the first time on appeal that the amendment should not be allowed because it would be unduly prejudicial and futile. These issues were never raised in the trial court. This court will not consider issues and theories not raised below. *Sahf v. Lake Havasu City Ass'n for the Retarded & Handicapped*, 150 Ariz. 50, 53, 721 P.2d 1177, 1180 (App.1986).

### C. Regesters' Cross–Appeal: Attorneys' Fees

The Regester marital community argues that the trial court should have awarded attorneys' fees incurred in defending against MacCollum's claims. Because we hold that judgment was properly entered against the marital community, the community is not entitled to attorneys' fees.

Joan Regester argues that she should have been awarded attorneys' fees because there was no rational basis upon which MacCollum could have asserted a claim against her individually. Assuming this to be true, she has not demonstrated that she incurred fees above what her husband and marital community incurred. We find no abuse of discretion in denying her fees.

## D. Attorneys' Fees on Appeal

MacCollum's request for attorneys' fees, pursuant to paragraph six of the promissory note, is granted pending compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

## III. CONCLUSION

We hold that the trial court erred in finding that joinder of the non-partner spouses was required to hold the defendants' marital communities liable for this transaction. We also hold that the trial court erred in denying MacCollum's motion for leave to file his second amended complaint. We reverse and remand for further proceedings consistent with this opinion.

VOSS, P.J., concurs.

FIDEL, Judge, specially concurring:

I join in the lead opinion, but write separately to address the continuing validity of *First Interstate Bank v. Tatum and Bell Center Assoc.*, 170 Ariz. 99, 821 P.2d 1384 (App.1991). This court held in *Tatum and Bell* that a loan guaranty signed by members of a partnership does not bind the marital communities of the signing partners in the absence of the signatures of their spouses. *Id.* at 104, 821 P.2d at 1389. We reached this holding by application of section 25–214(C), which provides:

Either spouse separately may acquire, manage, control or dispose of community property, or bind the community, except that joinder of both spouses is required in any of the following cases:

1. Any transaction for the acquisition, disposition or encumbrance of an interest in real property other than an unpatented mining claim or a lease of less than one year.

2. Any transaction of guaranty, indemnity or suretyship.

Our *Tatum and Bell* opinion concerned only subsection (C)(2) of this statute. By contrast, our opinion in *Chase Bank v. Acosta*, 179 Ariz. 563, 880 P.2d 1109 (App.1994), concerned only subsection (C)(1).[5] In *Acosta* we held that subsection (C)(1) does not foreclose recourse to the marital community of a general partner for the deficiency on a note securing the partnership's acquisition of real property. *Id.* at 571–73, 880 P.2d at 1117–19.

I agree with the holding of *Acosta* and its application in this case. I do not, however, endorse those portions of *Acosta* that unnecessarily question the validity of *Tatum and Bell. See id.* at 573, 880 P.2d at 1119, *see also id.* at 575–76, 880 P.2d at 1121–22 (Weisberg, J., concurring). There is in fact no inconsistency between our holding in *Tatum and Bell*, properly understood, and the majority holding in *Acosta.*

The distinguishing, and reconciling, factor is a principle that we recognize and apply in both *Acosta* and this decision: A partner's marital community has no interest in any specific item of property that the partnership owns. Though the partnership may own or trade in real property, the community has no real property interest in such property, but only a personal property interest in the partnership assets as a whole. *See* A.R.S. § 29–226 ("A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property."). It follows that a partner-spouse who engages in a "transaction for the acquisition, disposition or encumbrance of an interest in [partnership] real property," (paraphrasing § 25–214(C)(1)) has not, to any degree, engaged in a "transaction for the acquisition, disposition or encumbrance of [community] real property." Because the purpose of 25–214(C)(1) is to prevent unilateral dissipation of community real property, not community personal property, the restrictions of subsection (C)(1)

---

5. The *Acosta* court expressly declined to "analyze this issue from the standpoint of A.R.S. § 25– 214(C)(2) (the 'guaranty' exception)." *Id.* at 571, 880 P.2d at 1117.

do not apply. *Acosta,* 179 Ariz. at 572–73, 880 P.2d at 1118–19.

The transformation of partnership real property into community personal property has no bearing, however, on the statutory restriction on unilateral spousal guaranties. Partnership real property may be community personal property, but a guaranty is a guaranty. When a partner-spouse signs a partnership guaranty, he has engaged in a "transaction of guaranty, indemnity or suretyship." A.R.S. § 25–214(C)(2). And the statutory purpose—to preclude one spouse from unilaterally binding the community to a guaranty—is no less implicated when the unilateral signator undertakes to guarantee partnership debt than when he undertakes to guarantee debt of another form.

Because this case, like *Acosta,* concerns only subsection (C)(1), the real property provision, not subsection (C)(2), the guaranty provision, my colleagues find it unnecessary to compare and reconcile *Acosta* and *Tatum and Bell.* However, because the cases are readily reconciled by marking the distinction between real property transactions and guaranties, I add these words to highlight the distinction and lift any shadow cast by *Acosta* over our narrow application of subsection (C)(2) in *Tatum and Bell.*